Opinion by Justice Molberg *698 In this appeal, we address whether the trial court exceeded our mandate from a prior appeal and whether the evidence supported the appellate attorney's fees awarded by the trial court on remand.
This case was tried, appealed, reversed and remanded in part, tried again on the issue of appellate attorney's fees, and is now before us on a second appeal. In two issues, Scott Pelley P.C., Scott Pelley, and The Pelley Family Limited Partnership (Pelley Family L.P.) (collectively, Pelley parties) assert the trial court (1) exceeded the scope of this Court's remand and erred in awarding Michael C. Wynne, John Hunter Smith, and the M&S Wynne Family Limited Partnership (collectively, Wynne parties) post-judgment overhead expenses and (2) erred because no evidence supports the appellate attorney's fees awarded. We reverse the portion of the trial court's order awarding post-judgment overhead expenses and render judgment that the Wynne parties take nothing with respect to those expenses. We affirm the remainder of the trial court's judgment.
Background
The factual and procedural backgrounds of this case are fully discussed in this Court's prior opinion. See Scott Pelley P.C. v. Wynne , No. 05-15-01560-CV, 2017 WL 3699823 (Tex. App.-Dallas Aug. 28, 2017, pet. denied) (mem. op.). We do not repeat them here, except to the extent necessary.
The underlying litigation involved multiple claims, counterclaims, and cross-claims arising out of the dissolution of the law partnership of Nall, Pelley, Wynne & Smith. After a bench trial, the trial court signed a final judgment generally in favor of Wynne and Smith on their counterclaims and cross-claims for breach of contract, an accounting, and attorney's fees. Among other things, the final judgment ordered Pelley and Scott Pelley P.C. to pay$ 55,672.80 to Wynne and Smith as reimbursement for overhead operation expenses incurred as part of the law firm's post-dissolution expenses during the years "2012 to present"[1] and ordered the Pelley parties to pay $ 40,000 to the Wynne parties for attorney's fees incurred "in connection with the Gibbs Estate and Shankles Estate cases."
In the first appeal, Scott Pelley P.C. appealed the trial court's final judgment in favor of Wynne and Smith on its claims for repudiation, breach of contract, conversion, theft, damages under the Texas Theft Liability Act, and breach of fiduciary duty. Pelley appealed the trial court's final judgment in favor of Wynne and Smith on their cross-claims for breach of contract, specific performance, and voluntary judicial winding up of the partnership. The Pelley parties appealed the trial court's final judgment imposing joint and several liability as to Wynne's and Smith's counterclaims against Scott Pelley P.C. and the Pelley Family L.P. In a cross-appeal, Wynne and Smith appealed the trial court's final judgment in favor of Pelley on their cross-claims for breach of fiduciary duty and request for appellate attorney's fees.
We reversed the trial court's final judgment to the extent it failed to award contingent appellate attorney's fees sought by Wynne and Smith. We affirmed the remainder of the trial court's judgment. We *699 remanded the case to the trial court "for a determination of the reasonable amount of appellate attorneys' fees to be awarded to Wynne and Smith in view of the fact that Wynne and Smith successfully defended this appeal and were partially successful in their cross-appeal, and to make a determination of appellate attorneys' fees should the Pelley parties unsuccessfully appeal to the Texas Supreme Court." Scott Pelley P.C. , 2017 WL 3699823, at *33. The supreme court denied the Pelley parties' petition for review on January 12, 2018. Our mandate issued on February 27, 2018.
On April 9, 2018, the trial court conducted a hearing and addressed our appellate attorney's fee directive. It also considered the Wynne parties' claim against the Pelley parties for additional overhead expenses that allegedly accrued from the time of the trial court's final judgment to the date of the hearing on remand.
Award on Remand of Post-Judgment Overhead Expenses
In their first issue, the Pelley parties contend that the trial court's award of post-judgment overhead expenses exceeded this Court's mandate, was error, and should be reversed and rendered. In response, the Wynne parties argue the Pelley parties failed to preserve the issue for appeal, the trial court did not exceed our mandate because "the judicially supervised winding up of the partnership was not yet over," and the award for reimbursement of post-judgment overhead expenses was consistent with our opinion.
A mandate is an appellate court's formal command requiring the lower court to comply with the appellate court's judgment. Cessna Aircraft Co. v. Aircraft Network, LLC , 345 S.W.3d 139, 144 (Tex. App.-Dallas 2011, no pet.). When an appellate court affirms a trial court's judgment, or renders the judgment the trial court should have rendered, that judgment becomes the judgment of both courts. Id. When an appellate court reverses a portion of the trial court's judgment and remands the case, as we did here, the trial court is authorized to take all actions necessary to give full effect to the appellate court's judgment and mandate. Phillips v. Bramlett , 407 S.W.3d 229, 234 (Tex. 2013). "The scope of the mandate is determined with reference to both the appellate court's opinion and the mandate itself." Cessna Aircraft Co. , 345 S.W.3d at 144.
The trial court, however, has no authority to take any action that is inconsistent with or beyond what is necessary to give full effect to the appellate court's judgment and mandate. See Phillips , 407 S.W.3d at 234. The trial court must observe and carry out the mandate of the court of appeals, and its orders carrying out the mandate are ministerial. Cessna Aircraft Co. , 345 S.W.3d at 144. "When [the appellate] court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue." Hudson v. Wakefield , 711 S.W.2d 628, 630 (Tex. 1986) ;see also Cessna Aircraft Co. , 345 S.W.3d at 144 ("When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial."). Moreover, the appellate court's judgment is final, "not only in reference to the matters actually litigated, but as to all other matters that the parties might have litigated and had decided in the cause." Martin v. Credit Prot. Ass'n, Inc. , 824 S.W.2d 254, 257 (Tex. App.-Dallas 1992, writ dism'd w.o.j.).
When a trial court exceeds its authority under a mandate, the resulting judgment is erroneous.
*700 Phillips , 407 S.W.3d at 234. In a subsequent appeal, instructions given to a trial court in the former appeal will be adhered to and enforced. Hudson , 711 S.W.2d at 630.
Here, our judgment and mandate remanded the case to the trial court "for further proceedings consistent with this opinion." Our opinion stated in pertinent part:
We conclude that the trial court erred when it failed to award Wynne and Smith conditional appellate attorneys' fees because the trial court found that Wynne and Smith were entitled to trial attorneys' fees under section 38.001.
....
We remand the case to the trial court for a determination of the reasonable amount of appellate attorneys' fees to be awarded to Wynne and Smith in view of the fact that Wynne and Smith successfully defended this appeal and were partially successful in their cross-appeal, and to make a determination of appellate attorneys' fees should the Pelley parties unsuccessfully appeal to the Texas Supreme Court.
....
[T]he trial court erred when it failed to include contingent attorney's fees on appeal in the final judgment.
The trial court's final judgment is reversed as to Wynne's and Smith's request for contingent appellate attorneys' fees and remanded for further proceedings consistent with this opinion. The remainder of the trial court's judgment is affirmed.
Scott Pelley P.C. , 2017 WL 3699823, at *33. Consistent with the opinion, our mandate stated:
We REVERSE that portion of the trial court's judgment as to appellees' MICHAEL C. WYNNE and JOHN HUNTER SMITH request for appellate attorneys' fees. In all other respects, the trial court's judgment is AFFIRMED . We REMAND this cause to the trial court for further proceedings consistent with this opinion.
Despite the limited scope of our mandate, the trial court nevertheless entertained the Wynne parties' request for post-judgment overhead expenses. Contesting a post-judgment overhead expense award, the Pelley parties argued:
[T]he final judgment ordered the paying of overhead through the date of the trial. There is no provision in the final judgment or anywhere else where this Court ordered any sort of continuing obligation after the date of judgment.
Frankly, if it did, it wouldn't be a final judgment. There simply is no provision in the final judgment for the amount that counsel is proposing for additional overhead.
We agree with the Pelley parties. Our mandate and opinion are clear. Contrary to the Wynne parties' assertion, on remand the trial court had no authority to address the matter of overhead expenses, which had been finally adjudicated by our first opinion, judgment, and mandate. We remanded this case with specific instructions that the trial court determine the reasonable amount of appellate attorney's fees to be awarded to Wynne and Smith and make a determination of contingent appellate attorney's fees should the Pelley parties unsuccessfully appeal. Our mandate "limit[ed] the trial court's authority in exercising" its "jurisdiction to preside over the case and enter a remand judgment" to deciding those issues. See Phillips , 407 S.W.3d at 234.[2]
*701 Our judgment was final, "not only in reference to the matters actually litigated," i.e. , reimbursement of post-dissolution overhead expenses through the date of judgment, but also as to "all other matters that the parties might have litigated and had decided in the cause," i.e. , reimbursement of post-judgment overhead expenses. See Martin , 824 S.W.2d at 257. We conclude the trial court exceeded the scope of our mandate by awarding on remand post-judgment overhead costs to the Wynne parties. We resolve the Pelley parties' first issue in their favor.
Award on Remand of Appellate Attorney's Fees
In their second issue, the Pelley parties contend no evidence supported the trial court's award of appellate attorney's fees because the Wynne parties presented "no evidence that was admitted by the Trial Court" at the hearing on remand. According to the Pelley parties, neither an affidavit nor expert testimony on appellate attorney's fees was offered or admitted during the hearing. In response, the Wynne parties argue that evidence supporting the appellate attorney's fee award was constructively admitted, because (1) an affidavit and attached billing records filed in the trial court by the Wynne parties' counsel, Greg Westfall (Westfall affidavit), were discussed without objection by the parties and the trial court at the hearing;(2) the trial court awarded appellate attorney's fees based on that evidence; and (3) the evidence was legally and factually sufficient to support the appellate attorney's fees awarded.
Although in their briefing the Pelley parties recite the differing standards of review for both factual and legal sufficiency challenges of the evidence to support the fee award, their argument on appeal is that "no evidence" supports the trial court's award of appellate attorney's fees. Consistent with this, their prayer for relief requests that this Court reverse and render a take-nothing judgment on appellate attorney's fees. At oral argument, the Pelley parties' counsel acknowledged that their challenge is based upon a claim that no evidence supports the trial court's appellate fee award. We therefore construe the Pelley parties' second issue as a legal sufficiency challenge, not a factual sufficiency one. See Peerless Indem. Ins. Co., v. GLS Masonry, Inc. , No. 05-16-00875-CV, 2018 WL 3491045, at *4 (Tex. App.-Dallas July 20, 2018, no pet.) (mem. op.) ("Because appellants ask us to reverse and remand for a new trial rather than to reverse and render, we construe their issues as factual sufficiency challenges."); see also French v. Moore , 169 S.W.3d 1, 15 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (parties' prayer for rendition presents a legal sufficiency challenge); Heritage Res., Inc. v. Hill , 104 S.W.3d 612, 619 (Tex. App.-El Paso 2003, no pet.) (appellant's prayer for reversal and remand raises factual sufficiency challenge; remedy for legal sufficiency challenge is to reverse and render).
A legal sufficiency or "no evidence" point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital *702 fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. Merrell Dow Pharms., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ; see also Thompson & Knight LLP v. Patriot Expl., LLC , 444 S.W.3d 157, 162 (Tex. App.-Dallas 2014, no pet.). More than a scintilla of evidence exists when, as a whole, the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. , 953 S.W.2d at 711 (quoting Burroughs Wellcome Co. v. Crye , 907 S.W.2d 497, 499 (Tex. 1995) ). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. Thompson & Knight, LLP , 444 S.W.3d at 162. When reviewing a legal sufficiency challenge, "we must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary." Wal-Mart Stores, Inc. v. Canchola , 121 S.W.3d 735, 739 (Tex. 2003) (citing Bradford v. Vento , 48 S.W.3d 749, 754 (Tex. 2001) ).
In our first opinion, we concluded that because the Wynne parties were entitled to attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code for work performed at the trial court level, the trial court abused its discretion in failing to award conditional appellate attorney's fees when presented with a request for and evidence of those fees. "If an award of trial attorneys' fees is mandatory under [chapter 38], an award of appellate attorneys' fees is likewise mandatory" when there is evidence to support an award. Scott Pelley P.C. , 2017 WL 3699823, at *32 (citing Ventling v. Johnson , 466 S.W.3d 143, 154 (Tex. 2015) ).We remanded the case to the trial court for a determination of those fees.
At the hearing on remand, the Wynne parties argued the trial court should award "50 percent or something even northward of that of [appellate attorney's fees] which [were] about $ 78,000." To support the request, the Wynne parties presented the Westfall affidavit, previously filed with the clerk. Attached to the affidavit were billing records Westfall averred related only to "parts of the appeal upon which we prevailed." The billing records set forth the hourly rate claimed by Westfall, a description of the particular legal work for which fees were sought, and the date the work was performed. Westfall's affidavit also contained expert testimony in which Westfall testified he was familiar with the "usual and customary charges for similar and like services [in] this geographical region," his hourly rate of $ 350 per hour was "well within the zone of reasonableness for a trial lawyer with 25 years' experience who has tried around 100 cases and prosecuted over 50 appeals in the state and federal courts," and "the total segregated hours expended on the parts of the appeal on which attorney[']s fees are collectible equal 218.25 hours, which, at $ 350 [p]er hour, comes to $ 76,387.50[.]"
The Pelley parties argued the trial court should not award any appellate attorney's fees, because "[i]n the affidavit for attorney's fees that was filed in this case, [the Pelley parties] made no segregation between [the] Gibbs and Shankles claim, for which attorney's fees are recoverable versus all of the claims ... where attorney's fees were not recoverable."[3] In an opposing affidavit, Michael E. McCue, the Pelley *703 parties' counsel, opined in conclusory fashion that the manner in which Westfall had segregated the requested appellate fees was based on "an improper allocation." However, the Pelley parties contended that, if the trial court awarded appellate attorney's fees to the Wynne parties, the award should be twenty percent of their appellate attorney's fees-the same percentage of claimed attorney's fees awarded to the Wynne parties in the trial court's final judgment for the "Gibbs and Shankles claim." This, according to the affidavit, would result in an award of approximately $ 15,000. At no point in his affidavit did McCue aver that the fees sought by the Wynne parties were neither reasonable nor necessary, nor did he question the hourly rate requested. The trial court awarded $ 31,200 in appellate attorney's fees, less than half of the Wynne parties' request.
On appeal, the Pelley parties argue that the evidence is legally insufficient to support the award because there was no sworn expert witness testimony, neither of the "two exhibits which the attorney for the Wynne Parties handed to the court reporter to be marked ... were ever offered into evidence by the [Wynne parties], nor were they ever admitted into evidence by a ruling of the Trial Court." They also contend that even if the statements by the Wynne parties' counsel had been properly presented to the trial court, his assertions "would have been objected to as being unreliable, and should have been excluded as evidence." The Pelley parties, however, did not object to, but rather discussed, the Westfall affidavit in their arguments in the trial court. Nor did the Pelley parties object to the Wynne parties' references to Westfall's billing records on the basis they were not in evidence. The reporter's record clearly shows that the parties and the trial court treated the Westfall affidavit and attached billing records as if they had been admitted into evidence. We conclude that the Westfall affidavit and attached billing records were, "for all practical purposes, admitted." See Travelers Indem. Co. of R.I. v. Starkey , 157 S.W.3d 899, 904 (Tex. App.-Dallas 2005, pet. denied) ; see also Kirk v. Nat'l Collegiate Student Loan Tr. 2003-1 , No. 01-17-00722-CV, 2019 WL 966625, at *4 n.2 (Tex. App.-Houston [1st Dist.] Feb. 28, 2019, no pet.) (mem. op.).[4] Thus, the question is whether the Westfall affidavit and the itemized billing records provide legally sufficient evidence to support the amount of the trial court's appellate fee award.
The supreme court recently clarified the proper way to establish an attorney's fee award against an opposing party when fee-shifting is authorized by statute or contract, so as to withstand a legal sufficiency *704 challenge on appeal. See Rohrmoos Venture v. UTSW DVA Healthcare, LLP , No. 16-0006, 578 S.W.3d 469, 2019 WL 1873428 (Tex. Apr. 29, 2019).
The evidentiary touchstone, the court said, is proof that the fee is reasonable and necessary, "so that a fee-shifting award will compensate the prevailing party generally for its losses resulting from the litigation process." Rohrmoos Venture , 578 S.W.3d at 487, 490, 2019 WL 1873428, at *11, *13. In this determination, "the starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." Id. at 498, 2019 WL 1873428, at *20 (citing El Apple I, Ltd. v. Olivas , 370 S.W.3d 757, 760 (Tex. 2012) ). At a minimum, probative evidence to establish a reasonable and necessary fee includes a description of the particular services performed, the identity of each attorney who performed the services and approximately when, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services.[5] Once done, "[t]his base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing parties' claim through the litigation process." Rohrmoos Venture , 578S.W.3d at 498, 501-02, 2019 WL 1873428, at *20, *22. This lodestar figure constitutes a presumptively reasonable and necessary fee. Id. at 501-02, 2019 WL 1873428, at *22. An enhancement or reduction to the lodestar amount may be justified, thereby overcoming the presumption, by other relevant considerations, such as certain ones set forth in Arthur Andersen & Co. v. Perry Equipment Corp. , 945 S.W.2d 812, 818 (Tex. 1997), but considerations justifying a departure from the lodestar figure may not be those already accounted for in establishing the lodestar figure. Rohrmoos Venture , 578 S.W.3d at 495-96, 501-02, 2019 WL 1873428, at *18, *22. Indeed, "the base lodestar figure accounts for most of the relevant Arthur Andersen considerations." Id. at 500, 2019 WL 1873428, at *21. In sum, "[w]hen a fee claimant seeks to recover attorney's fees from an opposing party, it must put on evidence of reasonable hours worked multiplied by a reasonable hourly rate, yielding a base figure that can be adjusted by considerations not already accounted for in either the hours worked or the rate." Id. at 496, 2019 WL 1873428, at *1.
In its opinion, the supreme court rejected the practice of treating the lodestar method and the Arthur Andersen method as two separate avenues by which to establish an attorney's fee claim. "Based on our recent precedent, it should have been clear that the lodestar method developed as a 'short hand version' of the Arthur Andersen factors and was never intended to be a separate test or method." Id. at 496, 2019 WL 1873428, at *18. Consequently, testimony consisting solely of an attorney's experience, the total amount of fees or an estimate thereof, and the reasonableness of the fees are "generalities" that "are not sufficient to support a fee-shifting award under the lodestar method." Id. at 496, 2019 WL 1873428, at *19. The court made clear that "the lodestar analysis [is] to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can *705 be employed." Id. at 498, 2019 WL 1873428, at *20.
Here, the Westfall affidavit and the billing records meet the measure of Rohrmoos Venture. Those exhibits set forth (1) the particular services performed and when performed, (2) the identity of the attorney performing the services, (3) the reasonable amount of time required to perform the services, and (4) the reasonable hourly rate for the attorney performing those services. Additional evidence consists of the expert testimony found in the Westfall affidavit. We conclude the trial court's fee award is supported by legally sufficient evidence.
There is yet another reason why the trial court's fee award should be sustained. As the supreme court in Rohrmoos Venture pointed out, Texas Civil Practice and Remedies Code chapter 38 includes noteworthy provisions not typically found in other statutory fee enactments. Rohrmoos Venture , 578 S.W.3d at 490 n.9, 2019 WL 1873428, at *13 n.9.
Where the fee claim is predicated on chapter 38, the trial court may take judicial notice of the usual and customary fees and of the contents of the case file, presume that the usual and customary charges for the work performed are reasonable,[6] and set the fees based on such judicial notice without receiving further evidence. TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.003 -.004. The statute permitting this procedure is to be liberally construed to promote its underlying purposes. Id. § 38.005.
In the absence of other evidence supporting an attorney's fee award, the reviewing court will presume that the trial court took judicial notice of the usual and customary fees and of the contents of the case file in determining the amount of attorney's fees awarded. See Flint & Assocs. v. Intercontinental Pipe & Steel, Inc. , 739 S.W.2d 622, 626 (Tex. App.-Dallas 1987, writ denied) ; Nguyen v. Bui , No. 01-14-00239-CV, 2015 WL 1825658, at *3 (Tex. App.-Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op.). Judicial notice of the usual and customary fees constitutes some evidence on which the trial court may base an award. Coward v. Gateway Nat'l Bank of Beaumont , 525 S.W.2d 857, 859-60 (Tex. 1975).
The record on remand includes a "Brief to the Court Regarding Attorney Fees on Appeal" as well as the Westfall affidavit and the billing records that had "been segregated according to parts of the appeal upon which [the Wynne parties] prevailed" and "on parts of the appeal on which attorney[']s fees are collectible." The record on remand also includes the McCue affidavit, in which he generally testified the Wynne parties failed to properly segregate attorney's fees, but if appellate attorney's fees were awarded to the Wynne parties, it should be limited to "20% of the total billing set forth in Mr. Westfall's affidavit."
We conclude the trial court properly took judicial notice of the contents of the case file and the usual and customary attorney's fees, which are presumed to be reasonable. The trial court's judicial notice constitutes some evidence in support of the award, and no further evidence was needed. Long Trusts v. Atl. Richfield Co. , 893 S.W.2d 686, 688 (Tex. App.-Texarkana 1995, writ denied). The trial court acted within the plain language of chapter 38 of the civil practice and remedies code.
We conclude there was legally sufficient evidence to support the appellate attorney's fees awarded by the trial court and *706 resolve the Pelley parties' second issue against them.
Admittedly, following remand from the first appeal, we have the benefit of hindsight in this second appeal in determining the appellate attorney's fee issue presented. Here, because of the unusual posture of the case, we and the trial court were able to view evidence of the actual hours invested in the first appeal, an itemization of the particular work done and when it was done, the identity of the attorney who represented the Wynne parties on appeal, and the time required to perform the appellate services. Often, however, the appeal from a final judgment challenges an award, rather than a denial, of appellate attorney's fees. In those cases, a trial court does not have evidence of what actually occurred, but only evidence of what probably will occur. Thus, we express no opinion whether Rohrmoos Venture alters what one must show to establish the reasonableness and necessity of a fee for work not yet performed. See Assoun v. Gustafson , 493 S.W.3d 156, 168 (Tex. App.-Dallas 2017, pet. denied) (referencing Arthur Andersen factors and concluding that testimony should include "an opinion of what a reasonable attorney's fee would be for the services that would be necessary in the event of an appeal").
We reverse the portion of the trial court's order awarding post-judgment overhead expenses and render judgment that the Wynne parties take nothing with respect to post-judgment overhead expenses. We affirm the remainder of the trial court's order.

In its findings of fact and conclusions of law, the trial court found that "from January 1, 2012 through July, 2015, Scott Pelley owes Wynne and Smith $ 55,672.80 for his 15.2% share of upkeep and overhead expenses." In our prior opinion, we concluded the trial court did not err in its determination of the law firm's " 'wrapping up' expenses."

Contrary to the Wynne parties' contention, the Pelley parties were not required to object that the trial court's award of post-judgment overhead expenses exceeded the scope of this Court's mandate to preserve the issue for review. The trial court was bound to comply with this Court's judgment by the limitations in the mandate, see Tex. R. App. P. 51.1(b), and was not authorized to re-litigate the issue of overhead expenses, see Cessna Aircraft Co. , 345 S.W.3d at 144-45.

The Pelley parties did not bring their failure-to-segregate argument forward on appeal. At oral argument, counsel for these parties acknowledged that their sole challenge to the trial court's ultimate award is one based on the legal sufficiency of the evidence.

In their opening brief and at oral argument, the Pelley parties argued that the affidavits of Westfall and McCue were made pursuant to section 18.001 of the Texas Civil Practice and Remedies Code, relating to proof of the cost and necessity of services. From this position, the Pelley parties then contend that the opposing affidavit of their counsel, McCue, once filed, constituted a controverting affidavit under section 18.001(e) and (f), which destroyed the evidentiary effect of the Westfall affidavit. See Tex. Civ. Prac. & Rem. Code § 18.001(b) ("Unless a controverting affidavit is served ... an affidavit that the amount a person charged for a service was reasonable ... and that the service was necessary is sufficient evidence to support a finding ... that the amount charged was reasonable or that the service was necessary."). The affidavits at issue here are not section 18.001 affidavits. To the contrary, each of the affidavits is wide-ranging and travels outside the boundaries of section 18.001, involving more and different testimony than allowed under this statute. In any event, no such objection was raised in the trial court. As such, both the Westfall and McCue affidavits are hearsay. However, no hearsay objection was lodged in the trial court.

"Contemporaneous billing records are not required to prove that the requested fees are reasonable and necessary." Rohrmoos Venture , 578 S.W.3d at 502, 2019 WL 1873428, at *23. "Nevertheless, billing records are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." Id.

The presumption may be rebutted. Tex. Civ. Prac. & Rem. Code Ann. § 38.003.